Esther C. Rodriguez
Nevada State Bar No. 006473
**RODRIGUEZ LAW OFFICES, P.C.**
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel: (702) 320-8400; Fax: (702) 320-8401
info@rodriguezlaw.com

Kevin E. Collins, Jr.*
CA Bar No. 326349
**JOSEPHSON DUNLAP LLP**
5847 San Felipe St, Suite 2400
Houston, Texas 77057
Tel: (713) 352-1100; Fax: (713) 352-3300
kcollins@mybackwages.com
**Pro hac vice application forthcoming*
*Attorneys for McLemee and the Hourly Employees*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

TYSON MCLEMEE, Individually and On Behalf of Others Similarly Situated,

Plaintiff,

vs.

CAPITAL USA

Defendant.

**Case No. ________________**

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

(1) Failure to Pay Overtime Wages (Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*);

(2) Failure to Pay for All Hours Worked Under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.016);

(3) Failure to Pay Minimum Wages in Violation of the Nevada Constitution;

(4) Failure to Pay Overtime under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.018); and

(5) Failure to Pay All Wages Upon Termination Under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.018).

# ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Tyson McLemee (McLemee) brings this class and collective action to recover unpaid wages and other damages from Capital USA (Capital) for violations of the Fair Labor Standards Act (FLSA) and Nevada law.

2. Capital employed McLemee as one of its Hourly Employees (defined below).

3. Capital paid McLemee and the other Hourly Employees by the hour.

4. McLemee and the other Hourly Employees regularly work more than 40 hours in a workweek.

5. However, Capital does not pay McLemee and the other Hourly Employees for all their hours worked, including overtime hours.

6. Rather, Capital requires McLemee and the other Hourly Employees to suit out in protective clothing and safety gear necessary to perform their job duties, prepare equipment, and attend safety meetings, on its premises, prior to the start of their shifts.

7. Likewise, Capital requires McLemee and the other Hourly Employees to change out of their safety gear and protective clothing and shower, following the end of their shifts (¶¶ 6 and 7 collectively Capital's "pre/post shift off the clock policy").

8. But Capital does not pay McLemee and the other Hourly Employees for this time before and after their shifts.

9. Capital also requires McLemee and the other Hourly Employees to clock in and out for their shifts via its timekeeping system, but Capital automatically rounds their clock in and clock out punches to the nearest quarter (Capital's "rounding policy").

10. Capital automatically rounds McLemee's and the other Hourly Employees' clock in and clock out times for its own primary benefit and to the detriment of these employees

11. In addition to failing to pay McLemee and the other Hourly Employees for all their hours worked, Capital also fails to pay them overtime wages at the required premium rate.

12. Instead, Capital pays them non-discretionary bonuses, including production (footage) bonuses, retention bonuses, and referral bonuses, calculated based on factors established by Capital, including hours worked, that it excludes from their regular rates of pay for overtime purposes (Capital's "bonus pay scheme").

13. Capital's pre/post shift off the clock policy, rounding policy, and bonus pay scheme violate the FLSA and Nevada law by depriving McLemee and the other Hourly Employees of earned wages, including overtime wages based on their true regular rates of pay, for all hours worked.

## JURISDICTION & VENUE

14. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

15. This Court has supplemental jurisdiction of the state-law claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

16. This Court has general personal jurisdiction over Capital because Capital is a domestic corporation.

17. Venue is proper because Capital maintains its principal place of business in Elko County, Nevada, which is in this District. 28 U.S.C. § 1391(b)(1).

## PARTIES

18. Capital employed McLemee as a driller's helper 3 from approximately December 2024 until March 2026.

19. Capital classified McLemee as non-exempt and paid him by the hour.

20. Throughout his employment, Capital subjected McLemee to its pre/post shift off the clock policy, rounding policy, and bonus pay scheme.

21. McLemee's written consent is attached as **Exhibit 1**.

22. McLemee brings this class and collective action on behalf of himself and similarly situated Capital employees.

23. The FLSA collective of similarly situated employees is defined as:

> **All hourly employees Capital employed under its pre/post shift off the clock policy, rounding policy, and/or bonus pay scheme during the past 3 years through final resolution of this action ("FLSA Collective Members").**

24. McLemee also seeks to represent a class under Nevada law pursuant to FED. R. CIV. P. 23.

25. The Nevada Class of similarly situated employees is defined as:

> **All hourly employees Capital employed under its pre/post shift off the clock policy, rounding policy, and/or bonus pay scheme during the past 4 years in Nevada through final resolution of this action ("Nevada Class Members").**

26. The FLSA Collective Members and Nevada Class Members are collectively referred to as the "Hourly Employees."

27. Capital is a Nevada corporation.

28. Capital may be served with process by serving its registered agent: **Paracorp Incorporated, 318 N Carson St., #208, Carson City, Nevada 89701**.

## FLSA COVERAGE

29. At all relevant times, Capital has been an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

30. At all relevant times, Capital has been an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

31. At all relevant times, Capital has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as personal protective equipment, tools, drills, computers, tablets, etc.—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

32. At all relevant times, Capital has had an annual gross volume of revenue made or business done of over $1,000,000 each year.

33. At all relevant times, McLemee and the other Hourly Employees have been Capital's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

34. At all relevant times, McLemee and the other Hourly Employees have been engaged in commerce or in the production of goods for commerce.

## FACTS

35. Capital provides "full service mining, drilling, maintenance and geochemical analysis solutions to customers within the mineral industry."[1]

36. To meet its business objectives, Capital hires workers, like McLemee and the other Hourly Employees.

37. While exact job titles and duties may differ, McLemee and the other Hourly Employees are all subject to Capital's same or similar illegal policies—its pre/post shift off the clock policy, rounding policy, and bonus pay scheme—while performing the same or similar work.

38. For example, McLemee worked for Capital as a driller helper 3 from approximately December 2024 until March 2026.

39. McLemee's job duties included assisting in drilling and collecting mineral samples, as well as assisting with additional tasks as needed and directed by Capital.

40. McLemee's job duties likewise included donning and doffing safety gear and protective clothing, participating in safety meetings, and showering "off the clock," on Capital's premises before and after his scheduled shifts.

41. Capital paid McLemee by the hour.

42. Capital paid McLemee approximately $32 an hour.

43. Throughout his employment, McLemee typically worked approximately 6 to 7 days a week and 12 hours a day "on the clock" (72 to 84 hours a workweek).

44. The other Hourly Employees work similar 72 to 84 hour a workweek schedules "on the clock."

[1] https://www.capdrill.com/about-us/at-a-glance (last visited June 16, 2026).

45. Capital tracks McLemee's and the other Hourly Employees' "on the clock" hours using the timekeeping system it selects and controls.

46. But throughout their employment, Capital has not paid McLemee and the other Hourly Employees for all hours worked.

47. Instead, Capital subjects McLemee and the other Hourly Employees to its pre/post shift off the clock pay scheme.

48. For example, Capital required McLemee to prepare and put on protective clothing and safety gear (including hard hat, head lamp, reflective clothing, ear protection, steel toed boots, safety glasses, gloves, dust mask, respirator, SCSR), prepare necessary company equipment, and attend safety meetings, "off the clock," on its premises and without compensation.

49. This took McLemee approximately 30 minutes each workday.

50. McLemee could not perform his job duties in accordance with Capital's policies, procedures, and expectations without this protective clothing, safety gear, equipment, and meeting participation.

51. McLemee could not safely perform his job duties in accordance with Capital's policies, procedures, and expectations without this protective clothing, safety gear, equipment, and instruction.

52. Indeed, much of the safety gear McLemee must utilize is mandated by federal regulation. *See e.g.*, 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

53. The donning of protective clothing and safety gear and meeting participation were integral and indispensable work duties for McLemee because these duties were fundamentally intertwined with his other mining job duties.

54. Likewise, Capital required McLemee to remove and store his safety gear and protective clothing and shower each workday "off the clock," still on its premises and without compensation.

55. This took McLemee approximately 30 to 45 minutes each workday.

56. McLemee could not perform his job duties in accordance with Capital's policies, procedures, and expectations without removing and storing his safety gear and protective clothing, and washing up each workday, all while on Capital's premises.

57. McLemee could not safely perform his job duties in accordance with Capital's policies, procedures, and expectations without removing his safety gear and protective clothing and washing up each workday on Capital's premises.

58. The removal and storage of safety gear and protective clothing and showering are therefore integral and indispensable work duties for McLemee.

59. But under its pre/post shift off the clock policy, Capital did not compensate McLemee for the same.

60. McLemee and the other Hourly Employees perform their jobs under Capital's supervision and use materials, equipment, and technology Capital approves and supplies.

61. Capital requires McLemee and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

62. At the end of each pay period, McLemee and the other Hourly Employees receive wages from Capital that are determined by common systems and methods that Capital selects and controls.

63. Just as with McLemee, Capital fails to pay the other Hourly Employees for all their hours worked.

64. Capital subjects the other Hourly Employees to its pre/post shift off the clock policy.

65. Specifically, like McLemee, Capital requires the other Hourly Employees to prepare and put on protective clothing and safety gear (including hard hat, head lamp, reflective clothing, ear protection, steel toed boots, safety glasses, gloves, dust mask, respirator, SCSR), prepare necessary

equipment, and attend safety meetings, prior to their shifts, "off the clock," and without compensation.

66. As with McLemee, much of the safety gear the other Hourly Employees must utilize is mandated by federal regulation. *See e.g.*, 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

67. And Capital requires the other Hourly Employees to remove and store their safety gear and protective clothing and shower "off the clock," still on Capital's premises, and without compensation.

68. But, like McLemee, the other Hourly Employees are forced to perform this compensable work "off the clock" before and/or after their shifts.

69. And, just as with McLemee, Capital does not pay the other Hourly Employees for this integral and indispensable work they perform.

70. And like McLemee, these job duties take the other Hourly Employees approximately an hour to an hour and 15 minutes each workday.

71. Additionally, Capital subjects McLemee and the other Hourly Employees to its rounding policy.

72. Specifically, Capital rounds McLemee's and the other Hourly Employees' clock in and clock out punches to the nearest hour for Capital's —not the employees'—primary benefit.

73. Capital prohibits these employees from clocking in for their shifts more than 30 minutes prior to their scheduled start time and prohibits them from clocking out more than 30 minutes after their scheduled end time.

74. Capital takes disciplinary action or threatens to do so if McLemee and the other Hourly Employees clock in after their scheduled start time or before their scheduled end time.

75. Capital requires McLemee and the other Hourly Employees to perform their regular

job duties immediately upon clocking in.

76. By enforcing these policies, Capital ensures that its rounding policy primarily benefits Capital to the detriment of McLemee and the other Hourly Employees, thus denying them earned wages, including overtime wages during workweeks in which they work more than 40 hours.

77. Thus, because of its pre/post shift off the clock policy and rounding policy, Capital fails to pay McLemee and the other Hourly Employees earned wages for all hours worked, including overtime wages for all overtime hours worked.

78. Capital fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock" on its premises that Capital does not want performed.

79. Capital knows, should know, or recklessly disregards whether McLemee and the other Hourly Employees routinely perform work "off the clock," and without compensation, before and after their scheduled shifts.

80. Thus, Capital requires, requests, suffers, or permits McLemee and the other Hourly Employees to work "off the clock," without compensation, before and after their scheduled shifts.

81. Further, throughout their employment, Capital paid McLemee and the other Hourly Employees according to its bonus pay scheme.

82. Specifically, Capital agreed to pay and subsequently paid McLemee and the other Hourly Employees non-discretionary bonuses, including production (footage) bonuses, referral bonuses, and retention bonuses that it failed to include in their regular rates of pay for overtime purposes during workweeks they earned the bonuses and worked more than 40 hours.

83. For example, during the pay period ending July 19, 2025, Capital paid McLemee a $700.50 non-discretionary bonus, that it failed to include in his regular rate of pay, for overtime purposes:

| | Current 7/6/2025 - 7/19/2025 | | |
|---|---|---|---|
| | Hours/Units | Rate | Amount |
| **Earnings** | **132.0000** | | **$5,756.50** |
| Regular | 80.0000 | | $2,560.00 |
| Sick Pay | | | |
| Overtime 1.5 | 52.0000 | | $2,496.00 |
| Bonus | | | $700.50 |

84. Capital did not include this bonus in McLemee's regular rate of pay for overtime purposes during the above pay period, nor any other pay period.

85. As a result, under its bonus pay scheme, Capital fails to pay McLemee and the other Hourly Employees overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked over 40 in a workweek, in violation of the FLSA and Nevada law.

## Class & Collective Action Allegations

86. McLemee brings his claims as a class and collective action under Section 216(b) of the FLSA and under Nevada law pursuant to Fed. R. Civ. P. 23.

87. Like McLemee, the other Hourly Employees are victimized by Capital's pre/post shift off the clock policy, rounding policy, and/or bonus pay scheme.

88. Other Hourly Employees worked with McLemee and indicated they were paid in the same manner, performed similar work, and were subject to Capital's same pre/post shift off the clock policy, rounding policy, and/or bonus pay scheme.

89. Based on his experiences with Capital, McLemee is aware Capital's pre/post shift off the clock policy, rounding policy, and bonus pay scheme were imposed on other Hourly Employees.

90. The Hourly Employees are similarly situated in the most relevant respects.

91. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to wages for all hours worked, including overtime wages.

92. Rather, the Hourly Employees are held together by Capital's pre/post shift off the clock policy, rounding policy, and bonus pay scheme, which systematically deprive them of required wages for all hours worked, including required overtime wages for overtime hours worked.

93. Therefore, the specific job titles or precise job locations of the Hourly Employees do not prevent class or collective treatment.

94. Capital's failure to pay these employees "straight time" and overtime wages at the rates required by the FLSA and/or Nevada law results from generally applicable, systematic policies, and practices that are not dependent on the personal circumstances of the Hourly Employees.

95. Capital's records show the number of hours the Hourly Employees worked "on the clock" each workweek.

96. Capital's records show the specific times the Hourly Employees punched in and out for their shifts.

97. And Capital's records show that it rounded the Hourly Employees recorded time punches to the nearest hour.

98. Capital's records likewise show it paid the Hourly Employees nondiscretionary bonuses.

99. Capital's records show it failed to include these bonuses in the Hourly Employees' regular rates of pay for overtime purposes.

100. The back wages owed to McLemee and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

101. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Capital's records, and there is no detraction from the common nucleus of liability facts.

102. Therefore, the issue of damages does not preclude class or collective treatment.

103. McLemee's experiences are typical of the experiences of the other Hourly Employees.

104. McLemee has no interest contrary to or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

105. McLemee has an interest in obtaining the unpaid wages owed to the Hourly Employees under federal and Nevada law.

106. McLemee and his counsel will fairly and adequately protect the interests of the other Hourly Employees.

107. McLemee retained counsel with significant experience in complex class and collective action litigation.

108. A class and collective action is superior to other available means for fair and efficient adjudication of this action.

109. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Capital will reap the unjust benefits of violating the FLSA and Nevada law.

110. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome.

111. Indeed, the multiplicity of actions would create a hardship for the Hourly Employees, the Court, and Capital.

112. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

113. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely individual Hourly Employees.

114. Among the common questions of law and fact are:

a. Whether Capital's pre/post shift off the clock policy failed to compensate the Hourly Employees for all hours worked;

b. Whether Capital's pre/post shift off the clock policy deprived the Hourly Employees of overtime when they worked more than 40 hours in a workweek;

c. Whether Capital's rounding policy deprived the Hourly Employees of wages for time worked;

d. Whether Capital's bonus pay scheme deprived the Hourly Employees of overtime wages at the required rate, based on all remuneration, when they worked more than 40 hours in a workweek;

e. Whether Capital's pre/post shift off the clock policy, rounding policy, and/or bonus pay scheme deprived the Hourly Employees of earned wages, including overtime wages, upon termination of employment;

f. Whether Capital's decision not to pay the Hourly Employees all "straight time" and overtime wages due was made in good faith; and

g. Whether Capital's violations were willful.

115. There are many similarly situated Hourly Employees who have been denied wages, including overtime wages, in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

116. The Hourly Employees are known to Capital and can be readily identified and located through Capital's business and personnel records.

**CAPITAL'S VIOLATIONS WERE WILLFUL**

117. Capital knew it was subject to the FLSA's overtime provisions and Nevada Law's minimum wage, hours of work, overtime, and earned wages provisions.

118. Capital knew the FLSA and Nevada law required it to pay non-exempt employees, including the Hourly Employees, for all hours worked, including overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

119. Capital knew each Hourly Employee worked more than 40 hours in at least one workweek during the relevant period.

120. Capital knew it paid its Hourly Employees according to its pre/post shift off the clock policy, rounding policy, and bonus pay scheme.

121. Capital knew it had a duty to ensure its Hourly Employees were not performing work "off the clock" (without pay).

122. Capital knew it required the Hourly Employees to don and doff safety gear and protective clothing and attend meetings, "off the clock."

123. Capital knew it controlled the Hourly Employees' work procedures.

124. Capital knew its Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs.

125. Capital knew its Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement of their jobs.

126. In other words, Capital knew its Hourly Employees performed compensable work (*e.g.*, donning/doffing their safety gear and protective clothing and attending safety meetings) "off the clock" and without compensation.

127. Capital knew it rounded the Hourly Employees clock in and clock out punches to the nearest hour.

128. Capital knew it paid the Hourly Employees non-discretionary bonuses it failed to include in regular rates of pay for overtime purposes.

129. Capital knew its pre/post shift off the clock policy, rounding policy, and bonus pay scheme failed to compensate the Hourly Employees for all hours worked, including overtime hours, at the required rates.

130. Capital knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA and Nevada law.

131. Capital knowingly, willfully, and/or in reckless disregard carried out its pre/post shift off the clock policy, rounding policy, and bonus pay scheme that systematically deprived the Hourly Employees of "straight time" wages, earned wages, and overtime for their hours worked over 40 in a workweek, in violation of the FLSA and Nevada law.

## COUNT I
## FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
## (FLSA COLLECTIVE)

132. McLemee bring his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

133. Capital violated, and is violating, the FLSA by employing non-exempt employees (the FLSA Collective Members) in a covered enterprise for workweeks in excess of 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

134. Capital's unlawful conduct harmed the FLSA Collective Members by depriving them of the overtime wages they are owed.

135. Accordingly, Capital owes the FLSA Collective Members the difference between the wages actually paid and the required overtime wages actually earned.

136. Because Capital knew, or showed reckless disregard for whether, its pre/post shift off the clock policy, rounding policy, and bonus pay scheme violated the FLSA, Capital owes the FLSA Collective Members these wages for at least the past 3 years.

137. Capital is also liable to the FLSA Collective Members for an amount equal to all their unpaid wages as liquidated damages.

138. Finally, the FLSA Collective Members are entitled to recover all reasonable attorney's fees and costs incurred in this action.

## COUNT II
## FAILURE TO PAY FOR ALL HOURS WORKED
## (NEVADA CLASS MEMBERS)

139. McLemee brings his claim for failure to pay for all hours worked as a class action on behalf of himself and the other Nevada Class Members under Nevada law pursuant to FED. R. CIV. P. 23.

140. The Nevada Class members have a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

141. At all relevant times, Capital was subject to Nevada law because Capital was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

142. At all relevant times, Capital employed each Hourly Employee as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

143. NRS 608.016 provides that "an employer shall pay to the employee[s] wages for each hour the employee[s] worked." Nev. Rev. Stat. § 608.016.

144. Specifically, pursuant to the Nevada Administrative Code, hours worked includes "all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee." Nev. Admin. Code 608.115(1).

145. Capital failed to compensate the Nevada Class Members for all hours worked, as described in this Complaint.

146. Accordingly, McLemee "bring[s] a civil action to recover the difference between the amount paid to [the Nevada Class Members] and the amount of the minimum wage," for each hour worked. Nev. Rev. Stat. § 608.260.

147. As noted, Capital did not compensate the Nevada Class Members for integral and indispensable work before and after their shifts, performed under Capital's direction and control and on Capital's premises.

148. Nevada's Minimum Wage Amendment to the Nevada Constitution, Nev. Const. Art. 15, § 16, guarantees a minimum wage for each individual hour worked, rather than as an average over a workweek. *See Porteous v. Capital One Servs. II, LLC*, 809 F. App'x 354, 357 (9th Cir. 2020).

149. TheNevada Class Members have been deprived of their rightfully earned wages as a direct and proximate result of Capital's company-wide policies and practices.

150. As a direct and proximate result, the Nevada Class Members have suffered, and continue to suffer, substantial damages.

151. Capital regularly, willfully, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by NRS 608.115, with respect to the Nevada Class Members.

152. Through this unlawful course of conduct, Capital has deprived and continues to deprive the Nevada Class Members of records necessary to calculate with precision the compensation due to them.

153. Capital's actions were (and are) willfully oppressive, fraudulent and malicious, entitling the Nevada Class Members to punitive damages.

154. Capital's violations were intentional.

155. In accordance with N.R.S. 608.140, demand has been made to Capital for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

156. Accordingly, the Nevada Class Members are entitled to recover their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all unpaid hours worked, punitive damages, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law.

## <u>COUNT III</u>
## FAILURE TO PAY MINIMUM WAGES
## (NEVADA CLASS MEMBERS)

157. McLemee brings his failure to pay minimum wages claim as a class action on behalf of himself and the other Nevada Class Members under Nevada law and pursuant to FED. R. CIV. P. 23.

158. McLemee has a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

159. At all relevant times, Capital was subject to Nevada law because Capital was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

160. At all relevant times, Capital employed each Nevada Class Member as its covered

"employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

161. Nev. Const. Art. 15, § 16 sets forth the minimum wage requirements in the State of Nevada. Section 16 provides that:

> The provisions of the section may not be waived by agreement between an individual employee and an employer. . . . An employee claiming violation of the section may bring an action against his or her employer in the courts of the State to enforce the provisions of the section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of the section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce the section shall be awarded his or her reasonable attorney's fees and costs.

162. Accordingly, the Nevada Class Members are entitled to recover their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all unpaid hours worked, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law.

## COUNT IV
## FAILURE TO PAY OVERTIME WAGES
## (NEVADA CLASS MEMBERS)

163. McLemee brings his failure to pay overtime claim as a class action on behalf of himself and the other Nevada Class Members under Nevada law and pursuant to FED. R. CIV. P. 23.

164. McLemee has a private cause of action for unpaid overtime wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

165. At all relevant times, Capital was subject to Nevada law because Capital was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

166. At all relevant times, Capital employed each Nevada Class Member as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

167. Nevada law requires that employers, such as Capital, pay employees, such as the Nevada Class Members at least 1.5 times their regular rates of pay for all hours worked in excess of 40 a workweek. Nev. Rev. Stat. § 608.018(2).

168. The Nevada Class Members have been deprived of their overtime wages at the required rates—based on all remuneration—for all hours worked in excess of 40 a workweek as a direct and proximate result of Capital's pre/post shift off the clock policy, rounding policy, and bonus pay scheme.

169. Capital regularly, willfully, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by NRS 608.115, with respect to the Nevada Class Members.

170. Through this unlawful course of conduct, Capital has deprived and continues to deprive the Nevada Class Members of records necessary to calculate with precision the overtime compensation due to them.

171. Capital's actions were willfully oppressive, fraudulent and malicious, entitling McLemee and the Nevada Class Members to punitive damages.

172. Capital's violations were intentional.

173. In accordance with N.R.S. 608.140, demand has been made to Capital for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

174. Accordingly, the Nevada Class Members are entitled to recover unpaid overtime wages owed, punitive damages, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law.

**COUNT V**
**FAILURE TO PAY ALL WAGES UPON TERMINATION**
**(NEVADA CLASS)**

175. McLemee brings his failure to timely pay wages claim as a class action on behalf of himself and the other Nevada Class Members under Nevada law and pursuant to FED. R. CIV. P. 23.

176. McLemee has a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

177. At all relevant times, Capital was subject to Nevada law because Capital was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

178. At all relevant times, Capital employed the Nevada Class Members as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

179. When an employer, such as Capital, terminates employees, such as the Nevada Class Members, their earned but unpaid wages and compensation become due and payable immediately at the moment of discharge or become due and payable to a quitting or resigning Nevada Class Member within 7 days or the next regular payday. Nev. Rev. Stat. §§ 608.020 and 608.030.

180. Employers that do not pay discharged employees all earned wage "[w]ithin 3 days after the wages or compensation of a discharged employee becomes due" and pay quitting or resigning employees "on the day the wages or compensation is due" are subject to a penalty equivalent to "the wages or compensation of the employee at the same rate from the day the employee resigned, quit or was discharged or placed on nonworking status until paid or for 30 days, whichever is less." Nev. Rev. Stat. 608.040(1)(a-b).

181. NRS 608.050 grants that "[e]very employee shall have a lien as provided in NRS 108.221 to 108.246, inclusive, and all other rights and remedies for the protection and enforcement of such salary or wages as the employee would have been entitled to had the employee rendered services therefor in the manner as last employed" for the purpose of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default." Nev. Rev. Stat. § 608.050.

182. By failing to pay the Nevada Class Members for all hours worked (including earned regular wages, and/or overtime wages) at the required rates, based on all remuneration, Capital has failed to timely pay all wages due and owing to the Nevada Class Members who have separated

employment.

183. Capital's violations were intentional.

184. In accordance with N.R.S. 608.140, demand has been made to Capital for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

185. The Nevada Class Members who are no longer employed by Capital are entitled to recover an additional 30 days' wages under NRS 608.050, plus costs, interest, and attorneys' fees, as provided by Nevada law, and all other appropriate relief under Nevada law including all available damages and penalties.

## JURY DEMAND

186. McLemee demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, McLemee, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b. An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing McLemee and his counsel to represent the interests of the Hourly Employees;

d. An Order finding Capital liable to McLemee and the Hourly Employees for their unpaid overtime wages, liquidated damages, and any penalties, owed under the FLSA, plus interest;

e. An Order finding Capital liable to McLemee and the Hourly Employees for their unpaid minimum wages, overtime wages, earned wages, penalties, and all damages, including punitive damages, owed and available under Nevada law, plus interest;

f. A Judgment against Capital awarding McLemee and the Hourly Employees all their unpaid wages, including overtime wages, liquidated damages, statutory damages, and any other penalties available under the FLSA and/or Nevada law;

g. An Order awarding attorney's fees, costs, and expenses;

h. Pre- and post-judgment interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

Dated: June 16, 2026

Respectfully submitted,

**RODRIGUEZ LAW OFFICES, P.C.**

By: */s/ Esther Rodriguez*
Esther C. Rodriguez
Nevada State Bar No. 006473
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel: (702) 320-8400; Fax: (702) 320-8401
info@rodriguezlaw.com

Kevin E. Collins, Jr.*
CA Bar No. 326349
**JOSEPHSON DUNLAP LLP**
5847 San Felipe St, Suite 2400
Houston, Texas 77057
Tel: (713) 352-1100; Fax: (713) 352-3300
kcollins@mybackwages.com

**Pro hac vice application forthcoming*

**ATTORNEYS FOR MCLEMEE & THE HOURLY EMPLOYEES**

# EXHIBIT 1

**CONFIDENTIAL FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Tyson mclemee

1. I hereby consent to make a claim against Capital Drilling to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of any agreements concerning settlement, attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against Capital Drilling.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: Tyson mclemee (Apr 8, 2026 09:47:09 PDT) Date Signed: Apr 8, 2026